PASCAL M. LORDI, PLAINTIFF-APPELLEE, v. JOSEPH SPIOTTA, DEFENDANT-APPELLANT.

Submitted October 2, 1945—Decided January 30, 1946.

Before BROGAN, CHIEF JUSTICE, and Justices PARKER and OLIPHANT.

For the plaintiff-appellee, *Benjamin M. Weinberg.*

For the defendant-appellant, *Collins & Corbin* (*Edward A. Markley* and *Charles W. Broadhurst,* of counsel).

The opinion of the court was delivered by

BROGAN, CHIEF JUSTICE. The defendant, at the conclusion of the plaintiff's case, moved for a directed verdict on the ground that the plaintiff, at the time of his injury, was a social guest in the defendant's home in which circumstance the measure of duty towards the plaintiff rose no higher than "to refrain from any wanton or willful injury." The denial of that motion by the learned trial judge is the sole ground of appeal in this case. The following facts were proved: The plaintiff, Pascal M. Lordi, was employed by the defendant, Joseph Spiotta, and they were on very friendly terms. On June 19th, 1943, the defendant invited the plaintiff to come to his summer bungalow in Mine Hill, New Jersey. The hot water boiler in the bungalow was heated by natural gas which in this instance was contained in a cylinder, attached to the outside of the dwelling and connected to a burner in the cellar by means of a pipe. This is the normal method of operation and use. This natural gas as such is odorless. A federal government regulation requires the manufacturer to introduce into such gas a sulphur compound to give it a strong odor in the event that it escapes from the container or conduit. There was no such compound in this gas. If permitted to escape and accumulate in a confined area it will explode in the presence of a lighted match. The plaintiff was asked by the defendant, at about ten o'clock in the evening of the day in question, to light the gas heater to provide hot water for one of the defendant's nephews, a lad of tender years, who wanted to take a shower bath. The plaintiff went to the cellar, accompanied by the boy and, upon striking a match to light the gas burner, a violent explosion occurred which seriously injured the boy and the plaintiff. The boy died from his injuries shortly thereafter. It seems that earlier in the day the defendant's son, Roland, had lighted

the gas heater to get hot water for a bath. When he was leaving the house, about five p. m., he asked the defendant, his father, who was on the porch of the house, to "turn off" the heater. The defendant went into the cellar and turned off the heater or "thought he had." As he himself said, "I learned afterwards that I didn't." At all events, when the plaintiff went to the cellar, about five hours later and struck a match to apply its flame to the burner, the explosion just mentioned took place, due obviously to the fact that a quantity of gas had accumulated in and around the heater. From all of which the jury could conclude, as it did, that the defendant had not, earlier in the evening, entirely closed the valve which permitted the gas to feed into the burner. None of these facts or circumstances is open to debate. The defendant offered no evidence to defend.

There is a noticeable dearth of authority in this and other states on this precise question—the liability of a host for injury to guests in his house.

The appellant, in asking for a direction of verdict after the plaintiff rested, relied upon *Morril* v. *Morril,* 104 *N. J. L.* 557; *Gregory* v. *Loder,* 116 *Id.* 451; *Lewis* v. *Dear,* 120 *Id.* 244, and *Cosgrave* v. *Malstrom,* 127 *Id.* 505. Most of these cases are rested upon or make reference to the rule of the case decided in England in 1856—*Southcote* v. *Stanley, I Hurlst & N.* 247; 156 *Eng. Reprint* 1195; 25 *L. J. Exch.* (*N. S.*) 339. In that case the plaintiff was a guest in the defendant's hotel in which there was a glass door. It was necessary for the plaintiff to open that door to leave the hotel and the complaint or declaration stated that through the carelessness, negligence and fault of the defendant the door was left in an insecure and dangerous condition and by reason of such condition a large piece of glass fell from the door and injured the plaintiff. The declaration was held to be insufficient. In the court's opinion it was held that the same principle was involved as that which exists between master and servant, namely, assumption of risk of the condition of the premises; that a servant, under such circumstances, would have no cause of action because he undertakes the

ordinary risk attaching to the service, including those arising from the negligence of the master and his fellow servants. And it was said that this principle is the one to apply to the case of a visitor at a house; that his position while there is no better than any other member of the establishment so far as the negligence of the master or his servants be concerned. The insufficiency of the declaration or complaint in that case was further upheld in another opinion on the theory that the facts pleaded did not involve a "trap" and, further, on the ground that there was no act of commission charged, i. e., active negligence.

Those who enter the lands or premises of another are either invitees, licensees or trespassers. The first come by invitation, express or implied; the second are those who are not invited but whose presence is suffered; the third are neither invited nor suffered. The English cases limit the term "invitee" to those who were invited into the premises by the owner or occupier for some purpose, either business or of mutual interest; and those who are invited as guests, whether from benevolence or for social reasons, are not considered in law invitees but licensees. *Latham* v. *R. Johnson, &c.* (1913), 1 *K. B.* 398. The duty of an owner or occupier of premises towards invitees is to exercise reasonable care to have the premises in safe condition. The duty towards licensees is considerably less and obliges the host to give notice of unforeseen dangers such as traps, and the overall duty regarding trespassers amounts only to abstaining from willful or wanton injury.

In cases of this kind it is usually a matter of cardinal importance to ascertain just what status the plaintiff occupied in the defendant's home at the time when he suffered his injury. Here the defendant said that on Friday afternoon he invited the plaintiff to come to his Mine Hill house on Saturday. He said: "I told him [the plaintiff] I expected some company Sunday morning, some people from New York I do business with. They like to see my farm and would like to come up with my boys to look at the garden, with my two boys and nephew." The defendant's family and the plaintiff reached the bungalow Saturday after lunch time. The de-

fendant continued: "My wife started to cook for the next day. Mr. Lordi [plaintiff], I, my nephew and my son were working in the garden trying to get the Victory garden." The plaintiff testified that he didn't recollect whether he rode to the bungalow in his own automobile or that of the defendant but testified that upon reaching the place, "After 1:30 we unloaded the car, took the provisions and things out of the car, and then I went to look at the Victory garden that the boys were having * * * and around 5:30 Roland said he had an appointment in South Orange that evening and if I would go down to the station with him and drive the car back, so I said I would. At that time Mrs. Spiotta, Robert and Alex, Jr.—Mrs. Spiotta said she had to go into town and buy some odds and ends she needed for the following day, so we all got into the car for Dover and Roland was driving the car and he hollered out of the window and said: 'Pop, will you turn off the gas heater.' Pop said he would. Then we drove to Dover, did our shopping. had something to eat, and then drove back and we played this bowling after that." The plaintiff had visited the employer on four or five occasions. He had never been to the cellar and had had no experience with this particular heater. Furthermore, plaintiff undertook, on the defendant's request, to light the gas heater.

The learned trial judge determined that plaintiff's status was that of "invitee" in the legal sense, to whom the duty on the part of the defendant was "to use reasonable care commensurate with the danger known or by reasonable anticipation the defendant should have known."

The court's charge to the jury on the matter of negligence laid down the rule of care required towards an invitee. No objection to the charge was voiced or exception entered by the defendant. Whether the facts in proof justified the court's notion of the status of the plaintiff, as invitee in the home of the defendant, we need not decide. Assuming that the plaintiff was a guest and as such had to take the place as he found it, so to speak—yet the so-called guest rule cannot hold the proprietor of the establishment immune from answering in damages where the guest is injured by an unknown danger created by the proprietor's active negligence. Compare *Brig-*

man v. *Fiske-Carter Con. Co.*, 192 *N. C.* 791; 136 *S. E.*~*Rep.* 125 (see *Notes* 49 *A. L. R.* 779). The dangerous condition surrounding this gas heater is analogous to creating a trap for the plaintiff. The defendant, on asking the plaintiff to go into the cellar to light the heater, certainly held out the place, for the performance of the service requested, to be free from concealed peril. We conclude that the defendant's act in regard to closing the valve controlling the gas flow, and doing it so imperfectly as to permit a gas leakage which was bound to make an accumulation of this dangerous agency, amounted to active negligence.

The judgment is affirmed, with costs.