255 N.J. Super. 34 (1992)
604 A.2d 619
JOHN KNOETIG AND DENISE KNOETIG, HIS WIFE, PLAINTIFFS-APPELLANTS,
v.
HERNANDEZ REALTY CO., INC., JOHN ESPOSITO, LUTZ SUPERDYNE, INC. AND RICHARD ROE AND ANNCARL REALTY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 25, 1992.
Decided March 19, 1992.
Before Judges PRESSLER, SHEBELL and SKILLMAN.
Louis J. Cirrilla argued the cause for appellants (Giblin & Lynch, attorneys; Louis J. Cirrilla, on the brief).
John H. Norton argued the cause for respondents John Esposito and Anncarl Realty (Zucker, Facher & Zucker, attorneys; John H. Norton, on the brief).
*35 Douglas S. Brierley argued the cause for respondent Lutz Superdyne, Inc. (Schenck, Price, Smith & King, attorneys; Gilbert S. Leeds, of counsel; Douglas S. Brierley and Lauri L. Orfanelli, on the brief).
Respondent Hernandez Realty Co. did not file a brief.
The opinion of the court was delivered by PRESSLER, P.J.A.D.
This is a fireman's rule case. In Krauth v. Geller, 31 N.J. 270, 157 A.2d 129 (1960), the New Jersey Supreme Court adopted the rule which immunizes a landowner from liability for ordinary acts of negligence that cause an emergency exposing the responding firefighter to the risk of harm. In Berko v. Freda, 93 N.J. 81, 459 A.2d 663 (1983), the rule was applied to police officers. And in Rosa v. Dunkin' Donuts of Passaic, 122 N.J. 66, 583 A.2d 1129 (1991), the Supreme Court extended the rule to include within the scope of the immunity any negligent maintenance of the premises on which the emergency occurs, whether or not that negligence has a direct nexus to the cause of the emergency. The issue before us is whether the nonliability rule of Rosa applies to the negligent maintenance of a public right-of-way which the firefighter traverses in order to reach the site of the emergency. We conclude that it does not.
Plaintiff John Knoetig, whose wife Denise sues per quod, appeals from a summary judgment dismissing his complaint based on the trial judge's application of the fireman's rule. The facts as appear on the record of the motion proceedings, viewed most favorably to plaintiff, are as follows. Plaintiff is a firefighter employed by the town of Guttenberg. Shortly after midnight on January 31, 1987, and while he was on duty, he received a so-called still alarm indicating a problem that was neither a fire nor a gas leak. He was able to ascertain that the problem was a water leak in a small industrial complex which was causing water to spill out into the public right-of-way where it was starting to freeze. The premises were owned by *36 defendant Anncarl Realty, which had recently purchased them from defendant Lutz Superdyne with the intention of tearing down the old factory structures and building condominiums. Lutz, however, continued to occupy a portion of the premises as a month-to-month tenant while it was making its plans to relocate.
When plaintiff arrived at the scene, he found three Guttenberg police officers waiting for him who told him that they had found the source of the leak within one of the buildings. As we understand plaintiff's contention, there was an alleyway between two buildings, access to which was barred by a padlocked gate. Since the alley provided the most direct route to the source of the leak, it was plaintiff's plan to cut the padlock, enter the alley, and force an entrance into the building by way of a door leading into the alley. The police officers asked him not to do so since they had already communicated with a representative of the occupant, who was on his way with keys. In due course, the representative arrived. He has apparently not yet been identified, nor has it been ascertained whether he was an agent of Lutz, of Anncarl, or of defendant Hernandez Realty, which, we understand, manages the real estate interests of defendant John Esposito, the principal owner of Anncarl.
In any event, when the agent arrived, it appeared that he had no key to the locked gate. He urged plaintiff not to cut the padlock and told him that they could obtain access by a door some 75 feet down the block, traverse the interior of that building, and then reach the source of the leak. Plaintiff agreed, and started to follow the agent down the street. Before they reached the door, both plaintiff and the agent slipped and fell on accumulated ice and snow on the sidewalk, whose presence, it is conceded, was attributable to the elements and had nothing to do with the water leak. Indeed, the town had issued a summons to defendant Esposito some ten days before this event charging him with violation of the municipal snow removal ordinance.
*37 After having fallen, plaintiff was able to pick himself up, continued to follow the agent, who had also picked himself up, and finally reached the source of the leak, a broken water sprinkler pipe. He turned off the water at the main valve, and the emergency was thus dealt with. The deposition of Lutz' president indicates that sprinkler pipes had broken before, but in the past the repairs, including any required emergency attentions, were performed either by a plumber or a water sprinkler service company. Apparently, the fire department was asked to respond to this break because neither the police nor the agent was able to reach a plumber at that hour of the night.
Plaintiff, claiming to have suffered back and shoulder injuries as a result of the fall, brought this action against defendants. The gravamen of the action is their alleged negligent maintenance of the public sidewalk abutting the commercial premises within their ownership or control. Defendants' summary judgment motion based on Rosa ensued and was granted.
We are first satisfied that the fireman's rule, as enunciated and developed by the appellate courts of this State prior to Rosa, would not have barred this action. As we have indicated, the original formulation of the rule only barred recovery by a firefighter or police officer whose injury was caused by an act of negligence related to the cause of the emergency requiring his presence at the premises in the first instance. See, e.g., Berko v. Freda, 93 N.J. 81, 85, 459 A.2d 663 (1983) ("Case law draws a distinction between injuries stemming from the negligence that brought the firefighters or police to the scene in the first place and injuries suffered from independent causes that may follow."); Krauth v. Geller, supra, 31 N.J. at 273, 157 A.2d 129 ("It is quite generally agreed the owner or occupier is not liable to a paid fireman for negligence with respect to the creation of a fire"); Cella v. Interstate Properties, 232 N.J. Super. 232, 239, 556 A.2d 1262 (App.Div. 1989) (fireman's rule does not apply where "the property owners were free from negligence in causing the condition that brought the officer to the *38 premises.") Since the accumulation of ice and snow on the sidewalk in this case was completely unrelated to the water leak which created the emergency to which plaintiff was responding when he fell and was injured, there was no nexus between the negligence causing the emergency and the negligence causing the injury. Hence an essential pre-Rosa condition for application of the rule was clearly not met.
We now consider Rosa. There a police officer was responding to a medical emergency at the Dunkin' Donuts premises where an employee had become seriously ill. While assisting in carrying the employee out of the store to a police ambulance on a stretcher, the officer slipped on a white powdery substance, presumably sugar or flour, on the kitchen floor. In concluding that the fireman's rule barred the officer from a recovery despite the fact that the asserted negligence that caused his fall was unrelated to the emergency to which he was responding, the Supreme Court relied in the first instance on the same considerations which underlay Krauth, namely the public policy concern of not discouraging the citizenry from summoning emergency assistance and on the recognition that the job of firefighters and police officers is precisely that of confronting whatever hazard their response to an emergency entails  that is, that the officer necessarily assumes the risk. Although neither of these considerations alone explains the Court's decision to extend the rule, its reason to do so is, however, expressed in its observation that "[i]t contravenes good sense and good policy to hold property owners liable to prepare for such unexpected arrivals." 122 N.J. at 73, 583 A.2d 1129.
In proffering this rationale, the Court relied on this statement of Dean Prosser:
the most legitimate basis for [the fireman's rule] lies in the fact that firemen and policemen are likely to enter at unforeseeable times, upon unusual parts of the premises, and under circumstances of emergency where care in looking after the premises and in preparation for the visit, cannot reasonably be looked for. [Id. (quoting Prosser and Keeton, The Law of Torts, § 61 at 431 (5th ed. 1984))].
*39 The Court also approved the conclusion of two Law Division opinions following the Prosser rationale, Maryland Casualty Co. v. Heiot, 224 N.J. Super. 441, 540 A.2d 920 (Law Div. 1988), and Williams v. Levitt, 213 N.J. Super. 604, 517 A.2d 1242 (Law Div. 1986). Maryland Casualty had applied the fireman's rule to bar recovery by a firefighter who sustained an injury when he fell on the icy front steps of a house whose owner had summoned help for a medical emergency. Williams had applied the rule to bar recovery by a policeman who had fallen into a hole in a homeowner's yard while investigating the cause of an activation of his burglar alarm. In concurring with the result reached by both of these cases, the Court quoted with approval this analysis of Maryland Casualty:
Ordinarily a firefighter or police officer is summoned in circumstances of emergency where the landowner has not had time to prepare the premises for his arrival ... A firefighter responding to such an emergency call has no reasonable expectation that the property has been made safe for his arrival. [Rosa, supra, 122 N.J. at 73 [583 A.2d 1129] (quoting Maryland Casualty, supra, 224 N.J. Super. at 444, 540 A.2d 920)]
We accept this "safe premises" rationale, as indeed we are obliged to. We are convinced, however, that it has no relevance to an area open to the public, and more particularly, to a public right-of-way, including a public sidewalk.
We think the distinction between private premises and public areas is not only obvious but also pertinent to the matter at hand. The class of persons entering upon private premises is limited, and the duty owed to those persons is ordinarily dependent on their individual status, whether licensee, social invitee or business invitee. The class of potential users of areas open to the public is virtually infinite, and each member of the class has the same expectation of reasonable safety. The duty owed to the members of the class should also be the same for each. Thus, for example, an owner of commercial property has, in this jurisdiction, the duty of maintaining the public sidewalk abutting the premises in a reasonably safe condition, and will consequently be liable to a pedestrian who is injured as a result of the failure to do so. See, e.g., Mirza v. *40 Filmore Corp., 92 N.J. 390, 456 A.2d 518 (1983); Stewart v. 104 Wallace Street, Inc., 87 N.J. 146, 432 A.2d 881 (1981). Hence, in this case, any pedestrian, other than a police officer or firefighter, who would have sustained injury as a result of a fall occasioned by defendants' failure to clear the accumulation of ice and snow from the sidewalk, would undeniably have had a good cause of action against them. Even the agent with whom this plaintiff was walking and who also fell on the same icy sidewalk would have had a good cause of action against whomever, as between the owner and the tenant, was not his employer.
We cannot reconcile with any of the articulated bases supporting the fireman's rule, including the analysis by Rosa, the carving out of this limited class of firefighters and police officers from the general public and withholding from them alone a cause of action which every other pedestrian is entitled to prosecute. This is particularly so when the use then being made of the public sidewalk is no different from that of any other pedestrian and where the negligent maintenance of the sidewalk is entirely separate from the negligent act bringing the firefighter to the scene of the emergency. Since Rosa does not address the public-private distinction we find to be critical here and since its rationale does not encompass public areas, we are satisfied that it does not preclude our decision that the fireman's rule does not apply in these circumstances so as to bar recovery based on negligent maintenance of public areas.
We are, moreover, satisfied that the distinction we make here is entirely consonant with the weight of academic and judicial authority addressing the fireman's rule. Indeed, the Restatement position is based on just that distinction. Thus, the Restatement (Second) of Torts, § 345(2) (1965) states the rule as follows:
The liability of a possessor of land to a public officer or employee who enters the land in the performance of his public duty, and suffers harm because of a condition of a part of the land held open to the public, is the same as the liability to an invitee. [Emphasis added]
*41 This scope of liability is in contradistinction to § 345(1), which constitutes a person entering upon land not open to the public in the "exercise of a privilege" for a "public purpose" a licensee. As comment c explains in respect of the licensee provision of § 345(1):
... [F]iremen and policemen entering under authority of law, without any such element of business dealing, are commonly held by the courts to stand on the same footing as licensees. Occasionally they are called licensees; sometimes they are said to be sui generis but on the same footing as licensees. One explanation for this lies in the fact that firemen and policemen are likely to enter at unforeseeable times, upon unusual parts of the premises, and under circumstances of emergency, where care in preparation for their visit cannot reasonably be expected; and they do not have the implied representation or assurance of such care which is the basis of the greater duty to an invitee.[1]
Thus, where police officers or firefighters enter upon land open to the public, § 345(2) vouchsafes them the same reasonable expectation of reasonable safety and the same means of vindicating the defeat of that expectation as is enjoyed by any other member of the public. As comment e explains:
Where premises are held open for the use of the public, and a fireman or policeman enters upon a part of the premises which is so held open, and at a time when it is open, he may reasonably assume that reasonable care has been used to prepare the land for the reception of the public, and to make it safe for them.
See also Caroff v. Liberty Lumber Co., 146 N.J. Super. 353, 369 A.2d 983 (App.Div.), certif. denied, 74 N.J. 266, 377 A.2d 671 (1977) (accepting and applying to a state park ranger the premise of § 345(2)).
It is clear that the Restatement's distinction between private premises and public areas provides a cohesive synthesis of the New Jersey fireman's rule cases in which the negligence causing the injury was different from the negligence requiring the emergency response. Thus the alleged negligent maintenance resulting in the injury in Rosa took place in a restaurant kitchen. In Williams, it took place in a homeowner's backyard. *42 In Maryland Casualty, it took place on a homeowner's front steps. In none of these cases was the place a public area, and in all of them the Supreme Court barred or approved the barring of recovery. Rosa, supra, 122 N.J. at 76-77, 583 A.2d 1129.
We are aware that in Cella v. Interstate Properties, 232 N.J. Super. 232, 556 A.2d 1262 (App.Div. 1989), apparently disapproved of by the Supreme Court in Rosa, the police officer's injury was caused by a fall on a patch of ice in the parking lot of a shopping center while he was investigating what he believed to be the suspicious presence of a vehicle in that lot at 4:30 in the morning. We note, however, that the rationale for this court's conclusion that the fireman's rule did not apply was predicated on the lack of nexus between the negligence causing the injury and the cause of the officer's presence in the lot. With respect to the status of the parking lot itself, we pointed out that whether a shopping center parking lot is public or private at 4:30 in the morning, is "open to question." Id. at 239-240, 556 A.2d 1262. Because, however, of the lack of what we regarded as the perquisite nexus, we did not reach that question. If, however, we regard the parking lot at that hour as private rather than public, the barring of recovery to the officer would be consistent with our public area analysis. We are moreover, satisfied, that characterizing the parking lot at that hour as private is perfectly consistent with the Restatement analysis since the owner's invitation to the public to use the lot is reasonably construable as extending only to normal business hours and for usual business purposes.
We also note the apparent disapproval by Rosa of the Law Division's opinion in Chipps v. Newmarket Condo. Ass'n, 228 N.J. Super. 144, 549 A.2d 66 (Law Div. 1988), in which a foot patrolman, while checking the rear doors of commercial premises, was injured when he fell in descending a flight of outside steps. The basis of the Law Division's conclusion was that the officer "was in the same position as any other person properly on the premises." Id. at 147, 549 A.2d 66. This rationale *43 accords with Chief Justice Weintraub's recognition in Krauth, supra, 31 N.J. at 275, 157 A.2d 129, of a recognized exception to the fireman's rule based on the landowner's failure "to exercise due care with respect to the condition of places intended as a means of access by contemplated visitors." While Rosa may well be read as eliminating the access exception carved out by Krauth, nevertheless that exception had been based on a business-invitee analysis applied to privately owned business premises. It did not, as here, involve public areas subject to an unqualified invitation to the public. Consequently, Rosa's apparent bar of recovery to a firefighter injured on the outside steps of business premises does not necessarily bar recovery where the injury takes place on a public sidewalk or, indeed, any other area which is the subject of right of user in the general public. Thus the private-public distinction harmonizes the result in Chipps, the Supreme Court's disapproval thereof, and, notwithstanding that disapproval, the allowance of a recovery here.
We make this final observation. In adopting the fireman's rule, Krauth, addressing the traditional status analysis, concluded that the status of a firefighter responding to an emergency is sui generis, not strictly that of either a licensee or an invitee. 31 N.J. at 272-273, 157 A.2d 129. Consequently, the fireman's rule was not stated in terms of the disparate duty of a landowner owed to licensees and invitees, but rather in terms of the immunity of the landowner from liability for ordinary negligence. We also appreciate that the Restatement analysis of § 345 is expressly based on the distinction between licensees and invitees. But we see no conceptual difference, at least insofar as application of the private-public distinction of § 345 is involved, whether the fireman's rule is stated in terms of immunity/non-immunity or in terms of licensee/invitee.
We reach this conclusion because, ordinarily, the duty of a landowner does not encompass the obligation to make the premises reasonably safe for the use of a licensee. See generally Snyder v. I. Jay Realty Co., 30 N.J. 303, 153 A.2d 1 (1959). *44 Thus, whether liability is formulated in terms of duty to a licensee or duty to a sui generis police officer or firefighter, the result is the same. We, therefore, find instructive the analysis of the Supreme Court of Ohio in Brady v. Consolidated Rail Corp., 35 Ohio St.3d 161, 519 N.E.2d 387 (1988). The Ohio fireman's rule is phrased in terms of the licensee/invitee distinction and not, as is ours, in terms of immunity. Nevertheless, the application of the Ohio rule follows the same general pattern as the New Jersey rule. Consequently, in Ohio, the landowner is also ordinarily not liable to a police officer for negligent maintenance of his premises. Id. 519 N.E.2d at 388. The problem before the court in Brady, however, involved a police officer who was injured in a public right-of-way, that is, "the area where the railroad right-of-way intersects what would have been the public sidewalk." Id. at 389. The court, relying on § 345(2) of the Restatement, concluded that the railroad's liability for negligent maintenance of that public area extends to policemen. It reasoned that there is "no persuasive reason to hold defendant railroad company to a lesser standard of care with respect to police officers than that which they owe to the general public." Id. at 390. See also Furstein v. Hill, 218 Conn. 610, 590 A.2d 939, 943, n. 1 (1991), and Kaminski v. Town of Fairfield, 216 Conn. 29, 578 A.2d 1048, 1053, n. 5 (1990), both recognizing the public area distinction.
We are in accord with the Brady analysis. We do not believe that that analysis is precluded here either by the authority of or the rationale explicated by Rosa. In short, when a police officer or firefighter sustains an injury on a negligently maintained public sidewalk which he is using in the same manner as any other member of the public at large, we are able to perceive no justification in public policy, logic or legal doctrine for depriving him of the same legitimate expectations and the same reasonable remedies as are accorded to every other member of the public. Such a deprivation would promote none of the public policy concerns underlying the fireman's rule, would *45 serve no jurisprudential imperative and would produce an arbitrarily unfair result.
We have considered plaintiff's remaining challenges to the application here of the fireman's rule and we find them to be without merit. R. 2:11-3(e)(1)(E).
The summary judgment appealed from is reversed and we remand for further proceedings.
NOTES
[1] The identity of formulation between the Restatement comment and The Law of Torts is clearly due to the status of Dean Prosser as the Reporter of the Restatement.