34 A.3d 1248

WILLIE C. ROWE AND KAREN ROWE, HIS SPOUSE, PLAINTIFFS–APPELLANTS, v. MAZEL THIRTY, LLC AND 40–50 LENOX REALTY ASSOCIATES, LLC, DEFENDANTS–RESPONDENTS.

Argued November 30, 2011—Decided February 2, 2012.

36

*Pablo N. Blanco* argued the cause for appellants (*The Blanco Law Firm,* attorneys).

*Richard J. Hull* argued the cause for respondents (*Morgan Melhuish Abrutyn,* attorneys).

Justice LONG delivered the opinion of the Court.

The issue presented in this appeal is whether summary judgment properly was granted to a landowner on whose private premises a police officer, engaged in a safe-streets initiative, fell and was injured. In such circumstances, the police officer stood in the shoes of a licensee to whom the landowner owed a duty to warn of any dangerous conditions of which the owner knew or had reason to know and of which the officer was reasonably unaware.

Here, the Appellate Division ruled that the officer's foreknowledge of the dangerous condition of the property eliminated any duty on the part of the landowner, as a matter of law. Because this record presented a genuine issue of material fact regarding the officer's awareness of the dangerous condition, the grant of summary judgment was a usurpation of the jury's function, requiring reversal.

I.

Because of the posture of this case—the grant of summary judgment—we view the evidence in a light most favorable to the non-moving party and afford that party all legitimate inferences. *R.* 4:46-2(c). So viewed, the facts are as follows: On December 23, 2005, Officer Willie Rowe (plaintiff) was patrolling Lenox Avenue between South Arlington and South Walnut Streets in East Orange, New Jersey as part of the local police department's

"Safe Block" initiative. Plaintiff's duties were to "control peoples' entrance on the streets, check the ... vacant apartment buildings and the houses on the street, [and] arrest anyone for criminal violation[s], be it [for] drugs, thefts or warrants." Sometime between 4:00 p.m. and 5:00 p.m. plaintiff approached a vacant apartment building that was undergoing construction and renovations, to verify that the basement door was secured. The owners of the building in question are Mazel Thirty, LLC and 40–50 Lenox Realty Associates, LLC (defendants). Plaintiff had visited defendants' building once before on a similar patrol.

A set of exterior stairs made of brick and covered in a cement wash led from the sidewalk down to the basement door, and as plaintiff descended, grasping the handrail and shining his flashlight, "the cement that was covering the steps broke." Plaintiff's left foot got caught on the step and "bent backwards" while his right foot slid down several steps as he held onto the railing with his legs in a "split" position. Although he never fell to the ground completely, plaintiff felt numbness in his left leg and had difficulty limping back up the stairs. At his deposition, plaintiff stated that when he began his descent, the staircase had "the same appearance" as it had had during his previous visit. As a result of the incident on December 23, plaintiff experienced chronic pain in his legs and is no longer able to work as a police officer.

Abraham Brender, the building owners' representative, testified that he was aware of the Safe Block initiative but had never personally seen officers on foot patrol. Brender acknowledged that he had received a notice to cure from the building department regarding an unsecured basement door. He further stated that he was aware that a police officer had come to check the basement door in the past. On that occasion, according to Brender, the building superintendent had sent the officer away after explaining there was ongoing construction work and that the building was locked at night with guard dogs in place after working hours.

Procedurally, the case arose when plaintiff filed suit against defendants alleging that they "carelessly and negligently super-

vis[ed], maintain[ed] and controll[ed]" their premises and "fail[ed] to adequately warn plaintiff of the hazardous conditions present on the building and stairs." Defendants moved for summary judgment. Although acknowledging the dangerous condition of the stairs, they argued that plaintiff's presence was unforeseen and that, in any event, plaintiff was aware of the condition of the steps because he had previously been "on that very staircase." Plaintiff countered that both of those contentions were based on contested issues of fact that required submission to a jury.

The trial judge concluded that defendants could not have foreseen that police officers would be performing their duties at the time and place of the accident; that the defect was obvious; and that plaintiff knew the stairs were dangerous yet proceeded down them. On that basis, he granted summary judgment to defendants.

Plaintiff appealed and the Appellate Division affirmed, finding it unnecessary to determine what duty was owed because "the inescapable conclusion from the record is that plaintiff was aware of the dangerous condition of the property before he decided to descend the stairs[ ]" as a result of his prior visit which "should relieve defendants of potential liability." We granted plaintiff's petition for certification. 205 *N.J.* 318, 15 *A.*3d 326 (2011).

## II.

Plaintiff argues that the Appellate Division erred in holding as a matter of law that he knew of the dangerous condition; that issue, and any comparative fault on his part, are disputed and "should have been submitted to a jury."

Defendants counter that the evidence, including plaintiff's testimony that he had seen the stairs before and that they appeared the same on the date of the accident, along with his use of the handrail and a flashlight, eliminated any question as to whether he was aware of the dangerous condition. According to defendants, the Appellate Division properly ruled that plaintiff's awareness was an "inescapable" conclusion that eliminated any duty on their

part. In addition, relying on *Cella v. Interstate Properties*, 232 *N.J.Super.* 232, 556 *A.*2d 1262 (App.Div.1989), defendants argue that because plaintiff's presence on the day of the accident was not foreseen, their only duty was to warn of known latent defects and to refrain from "wanton harm."

## III.

In an appeal involving the grant or denial of a motion for summary judgment, we "employ the same standard [of review] that governs the trial court." *Henry v. N.J. Dep't of Human Servs.*, 204 *N.J.* 320, 330, 9 *A.*3d 882 (2010) (quoting *Busciglio v. DellaFave*, 366 *N.J.Super.* 135, 139, 840 *A.*2d 897 (App.Div.2004)). Our charge is to determine if there is a genuine issue as to any material fact or whether the moving party is entitled to judgment as a matter of law. *Brill v. Guardian Life Ins. Co. of Am.*, 142 *N.J.* 520, 529, 666 *A.*2d 146 (1995).

Not every issue of fact is material. *Ibid.* In order to determine materiality, it is necessary first to set forth the contours of the legal issue presented. *See, e.g., Canesi v. Wilson*, 295 *N.J.Super.* 354, 685 *A.*2d 49 (App.Div.1996) (finding summary judgment appropriate in absence of genuine dispute over existence of element of cause of action), *aff'd in part, rev'd in part*, 158 *N.J.* 490, 730 *A.*2d 805 (1999).

## A.

We thus turn to the basic principles governing premises liability. Traditionally, special rules applied to public emergency responders injured on private property. The so-called "firefighters' rule" operated "to prevent a firefighter [or other emergency responder] from recovering in tort from a landowner or occupier who has been negligent in starting or failing to curtail a fire [or other emergency condition]." *Ruiz v. Mero*, 189 *N.J.* 525, 529, 917 *A.*2d 239 (2007) (citations and internal quotation marks omitted); *see also Berko v. Freda*, 93 *N.J.* 81, 86, 459 *A.*2d 663 (1983)

(applying firefighters' rule to police officers). "[T]he prevalent explanation for the rule was one of public policy: that it was unjust and unfair to compensate firefighters and police for injuries sustained when facing dangers they had been hired to confront." *Ruiz, supra,* 189 *N.J.* at 530, 917 *A.*2d 239 (citations omitted). Although the original formulation of the rule was limited to bar recovery only for the negligence that was the source of the emergency requiring response, eventually the rule was expanded to "any tangential negligent act 'posing a hazard that is incidental to and inherent in the performance of the officer's duties.' " *Id.* at 532, 917 *A.*2d 239 (quoting *Rosa v. Dunkin' Donuts,* 122 *N.J.* 66, 76, 583 *A.*2d 1129 (1991)).

Dissatisfaction with the firefighters' rule, *id.* at 533–34, 917 *A.*2d 239, led, in 1993, to the enactment of *N.J.S.A.* 2A:62A–21 and *N.J.S.A.* 2A:62A–22, which provide:

> In addition to any other right of action or recovery otherwise available under law, whenever any [emergency responder] suffers any injury, disease or death while in the lawful discharge of his official duties and that injury, disease or death is directly or indirectly the result of the neglect, willful omission, or willful or culpable conduct of any person or entity, other than that [emergency responder's] employer or co-employee, the [emergency responder] suffering that injury or disease, or, in the case of death, a representative of that [emergency responder's] estate, may seek recovery and damages from the person or entity whose neglect, willful omission, or willful or culpable conduct resulted in that injury or death.
>
> . . . .
>
> The rights, remedies and limitations accorded by the provisions of this act are hereby declared to be in addition to and cumulative of the rights, remedies and limitations accorded under law and nothing herein shall be construed to deny, abrogate or impair any such statutory right, remedy or prohibition.
>
> [*N.J.S.A.* 2A:62A–21 to –22.]

In *Ruiz* we declared that that statute abrogated the firefighters' rule in all respects, thus permitting police, firefighters, and other emergency responders to recover for injuries suffered as a result of another's neglect, willful omission or willful and culpable conduct. *Ruiz, supra,* 189 *N.J.* at 537–38, 917 *A.*2d 239. That paved the way for such public officers to have their claims against landowners adjudicated based on the same standards that govern all other citizens.

## B.

The classic common law approach to premises liability is "predicated on the status of the person on the property at the time of the injury": invitee, licensee, or trespasser. *Hopkins v. Fox & Lazo Realtors,* 132 *N.J.* 426, 433, 625 *A.*2d 1110 (1993); *Snyder v. I. Jay Realty,* 30 *N.J.* 303, 153 *A.*2d 1 (1959). As *Snyder* explained:

> In this state we have consistently adhered to the historically based view of the common law that the duty owed by an occupier of land to third persons coming thereon is determined according to the status of such third person, *i.e.,* invitee, licensee or trespasser. Indeed, the ascertainment of that status is an essential preliminary to the application of the particular standard of care to be exercised by the land occupier. *See Taneian v. Meghrigian,* 15 *N.J.* 267, 273–274 [104 *A.*2d 689] (1954); *Imre v. Riegel Paper Corp.,* 24 *N.J.* 438, 443–446 [132 *A.*2d 505] (1957); *Berger v. Shapiro,* 30 *N.J.* 89 [152 *A.*2d 20] (1959); *see also Restatement, Torts* §§ 329 *et seq.* These common law classifications are sufficiently flexible to fulfill the purposes of our legal system in serving the needs of present day society. For example, compare *Fleckenstein v. Great Atl. & Pac. Tea Co.,* 91 *N.J.L.* 145 [102 *A.* 700] (E. & A.1917) with *Murphy v. Kelly,* 15 *N.J.* 608 [105 *A.*2d 841] (1954); *see Taylor v. N.J. Highway Authority,* 22 *N.J.* 454, 464 [126 *A.*2d 313] (1956). We believe that adherence to the traditional classifications is desirable in that it lends a reasonable degree of predictability to this area of the law. These classifications also aid in the proper distribution of trial functions between judge and jury, wherein the latter determines only disputed questions of fact. We therefore proceed to the initial inquiry into the plaintiff's status as to each defendant at the time and place he sustained his injury.

[*Snyder, supra,* 30 *N.J.* at 311–12, 153 *A.*2d 1.]

The actual categories—invitee, licensee, and trespasser—have been described as follows. The invitee comes by invitation, express or implied, generally for some business purpose of the owner. *Lordi v. Spiotta,* 133 *N.J.L.* 581, 584, 45 *A.*2d 491 (Sup.Ct. 1946). The licensee is permitted to come upon the property, and does so for his own purposes. W. Page Keeton et al., *Prosser and Keeton on Torts* § 60, at 412 (5th ed.1984). The trespasser is "neither invited nor suffered." *Lordi, supra,* 133 *N.J.L.* at 584, 45 *A.*2d 491.

Those common law classifications bear with them established duties on a sliding scale; "as the legal status of the visitor

improves, the possessor of land owes him more of an obligation of protection." *Prosser and Keeton on Torts, supra*, § 58, at 393.

> The duty owed to a trespasser is relatively slight. A landowner, under most circumstances, has a duty to warn trespassers only of artificial conditions on the property that pose a risk of death or serious bodily harm to a trespasser. *Renz v. Penn Cent. Corp.*, 87 *N.J.* 437, 435 *A.*2d 540 (1981); *Restatement (Second) of Torts* § 337 (1969). To the social guest or licensee, the landowner owes a greater degree of care. Although the owner does not have a duty actually to discover latent defects when dealing with licensees, the owner must warn a social guest of any dangerous conditions of which the owner had actual knowledge and of which the guest is unaware. *Berger v. Shapiro*, 30 *N.J.* 89, 97–98, 152 *A.*2d 20 (1959); *Benedict v. Podwats*, 109 *N.J.Super.* 402, 406–07, 263 *A.*2d 486 (App.Div.), *aff'd o.b.*, 57 *N.J.* 219, 271 *A.*2d 417 (1970); *Restatement (Second) of Torts* § 343 (1969); *Prosser and Keeton on the Law of Torts* § 60 (5th ed.1984).
>
> Only to the invitee or business guest does a landowner owe a duty of reasonable care to guard against any dangerous conditions on his or her property that the owner either knows about or should have discovered. That standard of care encompasses the duty to conduct a reasonable inspection to discover latent dangerous conditions. *Handleman v. Cox*, 39 *N.J.* 95, 111, 187 *A.*2d 708 (1963); *Restatement (Second) of Torts* § 343 (1969); *see Butler v. Acme Markets, Inc.*, 89 *N.J.* 270, 275, 445 *A.*2d 1141 (1982).
>
> [*Hopkins, supra*, 132 *N.J.* at 434, 625 *A.*2d 1110.]

The slight duty to the trespasser arises out of the fact that his presence is not to be anticipated. *Prosser and Keeton on Torts, supra*, § 58, at 394. At the other end of the scale, the highest duty is owed to the invitee who has been asked to come onto the premises, generally for the owner's business purposes, and for whose presence the property is presumably prepared. *Id.* at § 61, at 422. The theory advanced in support of the duty to a licensee is essentially that his presence is permitted. By extending permission, the landowner represents that the property is "as safe as it appears" and when he knows that it is not, it is "something like fraud" to fail to give warning. *Id.* at § 60, at 417.

▮▮▮▮ Where the status of the plaintiff, vis-à-vis a landowner, does not fall into one of the pre-determined categories, as in *Hopkins*, in which we were called upon to assess the liability of a real estate broker to a plaintiff injured at an open house on a third party's premises, we perform a full duty analysis:

> [t]he inquiry should not be what common law classification or amalgam of classifications most closely characterizes the relationship of the parties, but . . .

whether in light of the actual relationship between the parties under all of the surrounding circumstances the imposition on the [defendant] of a general duty to exercise reasonable care in preventing foreseeable harm to [plaintiffs] is fair and just. That approach is itself rooted in the philosophy of the common law.

. . . .

Whether a person owes a duty of reasonable care toward another turns on whether the imposition of such a duty satisfies an abiding sense of basic fairness under all of the circumstances in light of considerations of public policy. That inquiry involves identifying, weighing, and balancing several factors—the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution.

[*Hopkins, supra*, 132 *N.J.* at 438–39, 625 *A.*2d 1110 (citations omitted).]

*See also Olivo v. Owens–Illinois, Inc.*, 186 *N.J.* 394, 895 *A.*2d 1143 (2006) (applying *Hopkins* where worker's wife, who did not enter onto husband's employer's premises, contracted asbestosis from washing his work clothes).

Ultimately, the same considerations apply whether a party falls squarely within a common law classification or not. The common law categories are a shorthand, in well-established classes of cases, for the duty analysis; they, too, are based on the relationship of the parties, the nature of the risk, the ability to exercise care, and considerations of public policy. The only difference is that, through the evolution of our common law, the duty analysis has already been performed in respect of invitees, licensees (social guests), and trespassers. In furtherance of the goal of a "reasonable degree of predictability[,]" *Snyder, supra*, 30 *N.J.* at 312, 153 *A.*2d 1, those standards continue to guide us. *See Parks v. Rogers*, 176 *N.J.* 491, 825 *A.*2d 1128 (2003) (analyzing duty owed fall victim in light of three common law categories).

## IV.

■ Although police, firefighters, and other emergency responders performing their public function are, in some respects, *sui generis, Krauth v. Geller*, 31 *N.J.* 270, 273, 157 *A.*2d 129 (1960), some broad principles have emerged in most jurisdictions regarding their status for premises liability purposes. For example, we long ago declared that officers performing their official duties are not trespassers because they enter pursuant to a public

right. *Krauth, supra,* 31 *N.J.* at 272, 157 *A.*2d 129; *see Prosser and Keeton on Torts, supra,* § 61, at 428–29; *see also Mounsey v. Ellard,* 363 *Mass.* 693, 297 *N.E.*2d 43 (1973). They are therefore owed a greater duty than that afforded trespassers. Glenn Weissenberger & Barbara B. McFarland, *The Law of Premises Liability* §§ 5. 1, 5.9 (3d ed.2001). We continue to hold that view.

■ Moreover, like our sister jurisdictions, we have recognized that because of the officer's special status, he may theoretically be categorized either as an invitee or licensee, depending on the facts. *Caroff v. Liberty Lumber Co.,* 146 *N.J.Super.* 353, 359–60, 369 *A.*2d 983 (App.Div.), *certif. denied,* 74 *N.J.* 266, 377 *A.*2d 671 (1977); *Knoetig v. Hernandez Realty Co.,* 255 *N.J.Super.* 34, 40–42, 604 *A.*2d 619 (App.Div.1992). Thus, for example, where the presence of the officer is requested for a purpose directly or indirectly connected to the owner's business (*e.g.,* a construction official), the officer is afforded the status of an invitee because that is the price the law imposes on the owner for the economic benefit conferred upon him. *Prosser and Keeton on Torts, supra,* § 61, at 429. In addition, the law presumes that the business owner has prepared the way for those who are advancing its business interests. *Caroff, supra,* 146 *N.J.Super.* at 359–362, 369 *A.*2d 983; *The Law of Premises Liability, supra,* § 5.11; *Prosser and Keeton on Torts, supra,* § 61, at 429.

Likewise, where an official enters an area of private property to which the public is invited, like a shopping center, he is given the protections accorded to an invitee. *Knoetig, supra,* 255 *N.J.Super.* at 40–42, 604 *A.*2d 619. Again, the assumption underlying that status is that the landowner has prepared the way for the entry of the public and the public official should be treated accordingly. *Ibid.* (citing *Caroff, supra,* 146 *N.J.Super.* 353, 369 *A.*2d 983 (recognizing distinctions between public and private areas)).[1]

---

[1] Indeed, some scholars have argued that because of their unique public role, all officers should be characterized as invitees for premises liability. *Prosser and Keeton on Torts, supra,* § 61, at 432. However,

To the contrary, where the officer, in the performance of his duties, enters onto property to which the public is not invited, he is not there to advance an interest of the owner and there is no expectation that the premises have been prepared for him. Thus, the basis for the greater duty of making the premises safe, which is owed to the invitee, is lacking. *Knoetig, supra,* 255 *N.J.Super.* at 41, 604 *A.2d* 619 (citing *Restatement (Second) of Torts* § 345(1) comment c). In those circumstances, the officer is deemed to be a licensee. *Knoetig, supra,* 255 *N.J.Super.* at 43–44, 604 *A.2d* 619; *Cella, supra,* 232 *N.J.Super.* at 240, 556 *A.2d* 1262; *Restatement (Second) of Torts* § 345.

That status springs from a number of different notions, including the officer's privilege to enter, which is said to bear with it the owner's implicit permission to do so, and the fact that the officer knows his coming is not completely unanticipated. *Prosser and Keeton on Torts, supra,* § 61, at 429. It is likewise a function of the public's understanding and expectation that police and firefighters may, from time to time, enter onto private areas of private property in furtherance of their public duties and that, as a matter of public policy, those owners should provide warnings [2] of known dangerous conditions of which the entrant is reasonably unaware.

■ One point is clear, the lowest duty to be ascribed to a police officer or firefighter who is injured in the performance of his official functions is that owed to a licensee: the duty to warn of dangers of which the owner is or reasonably should be aware, and

---

[t]he courts in a majority of jurisdictions have classified firefighters and police officers as licensees, mainly because it would place an intolerable burden upon landowners if the higher degree of care owed to invitees were imposed, especially since firefighters and police officers may appear at unexpected times and on unexpected parts of the premises.

[*The Law of Premises Liability, supra,* § 5.1.]

[2] There is no set form for the warnings. If the owner happens to be present, the warning can be verbal. But signs, cones, sawhorses, and roping off, to name a few, will also suffice. *Cella, supra,* 232 *N.J.Super.* at 241, 556 *A.2d* 1262.

which are reasonably unknown to the officer. *Parks, supra*, 176 *N.J.* at 498, 825 *A.*2d 1128.

To the extent that *Cella*, decided while the firefighters' rule was in effect although not reliant on it, suggests that an officer, in the course of his duties, who comes onto private property during an unanticipated emergency, is not entitled to the ordinary warning accorded a licensee, it missed the mark. The actual unexpectedness of an officer's entry, as in the case of an emergency, merely serves to justify lowering the landowner's duty from that owed to an invitee to that owed to a licensee; it does not strip the officer of his licensee status.

> [F]iremen and policemen are likely to enter at unforeseeable times, upon unusual parts of the premises, and under circumstances of emergency, where care in preparation for their visit cannot reasonably be expected; and they do not have the implied representation or assurance of such care which is the basis of the greater duty to an invitee.
>
> [*Restatement (Second) of Torts* § 345 comment c.]

In the final analysis, the specific facts and circumstances of an officer's presence on a landowner's premises will determine his status as an invitee or licensee and the concomitant duty owed. Recapping, where an officer stands in the shoes of an invitee, the owner has a duty to conduct a reasonable inspection to discover latent dangerous conditions and either repair or warn of them. *Handleman v. Cox*, 39 *N.J.* 95, 111, 187 *A.*2d 708 (1963); *Kingett v. Miller*, 347 *N.J.Super.* 566, 568, 791 *A.*2d 224 (App.Div.2002). To the contrary, if the officer is a licensee, the landowner has no duty to inspect, but has a duty to warn of any dangerous conditions of which the owner knows or reasonably should know and of which the officer reasonably is unaware. *Hopkins, supra*, 132 *N.J.* at 434, 625 *A.*2d 1110; *accord Prosser and Keeton on Torts, supra*, § 60, at 417–18.

## V.

Here, plaintiff was not invited onto defendants' premises for a business purpose; nor did he enter an area of defendants' property open to the public. In addition, he did not actually

forewarn defendants that he would be coming. Under those circumstances, he had no claim to the status of an invitee. Rather, plaintiff was privileged to and, in fact, did enter a non-public portion of defendants' premises in furtherance of the Safe Block initiative. Defendants, like all others, reasonably should have expected that, from time to time, a public official, like plaintiff, either as a result of an emergency or in furtherance of a public caretaking function, would come onto their property. Plaintiff likewise knew that his coming was not completely unanticipated. Under those circumstances, plaintiff falls within the category of licensee, entitled to a warning of dangers of which the landowner was aware or reasonably should have been aware [3] and which the officer, by the exercise of his senses, would not have intuited.

## VI.

With that as prologue, we turn to whether a genuine issue of material fact warranting submission of the case to a jury was presented. The Appellate Division held that plaintiff's awareness of the dangerous condition of the property before deciding to descend the stairs warranted the grant of summary judgment to defendants. We disagree. The panel's conclusion that plaintiff knew of the danger rests largely on plaintiff's deposition testimony that on December 23, the steps "looked the same" as on his previous visit to the building, except that on December 23 they broke and caused him to fall. That testimony does not indicate that plaintiff observed the stairs to be in a state of obvious disrepair on either visit, or that what he observed put him on notice of a dangerous condition. Indeed, all that he said was that there was no meaningful difference in the appearance of the stairs on his two visits. Because there is no evidence that plaintiff believed that the stairs were dangerous originally, the suggestion

---

[3] Defendants in this case concede that the steps were dangerous and that they were aware of the danger.

that similarity of appearance was notice of danger presents a question for the jury.

The Appellate Division also cited the fact that plaintiff took precautions in descending the stairs by shining a flashlight and holding onto the railing as evidence of his foreknowledge of the danger inherent in traversing the steps. However, a jury could conclude that those precautions would have been taken by any reasonable person descending a flight of stairs at dusk and do not resolve the factual dispute over plaintiff's awareness of the decrepit nature of the stairs.

By affirming the grant of summary judgment, the Appellate Division effectively "resolved a dispute on the merits that should have been decided by a jury. It was not the court's function to weigh the evidence and determine the outcome but only to decide if a material dispute of fact existed." *Gilhooley v. County of Union*, 164 *N.J.* 533, 545, 753 *A.*2d 1137 (2000) (citing *Brill, supra*, 142 *N.J.* at 540, 666 *A.*2d 146).

## VII.

The judgment of the Appellate Division is reversed. The matter is remanded to the trial court for further proceedings consistent with the principles to which we have adverted.

*For reversal and remandment*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, HOENS, and PATTERSON and Judge WEFING (temporarily assigned)—7.

*Opposed*—None.