RECORD IMPOUNDED

 NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-4583-13T4
JUDY DOE, by and through
her mother, MOTHER DOE and
MOTHER DOE,

 Plaintiffs-Appellants,

v.

SAKER SHOPRITES, INC.,
SAKER HOLDINGS CORP.,
J.S. FAMILY LIMITED
PARTNERSHIP, L.P.
WAKEFERN FOOD CORPORATION,
JOHN ROE and T.S.,

 Defendants-Respondents,

and

J.B. and A.Z.,

 Defendants.
________________________________________________________________

 Argued June 21, 2016 – Decided June 16, 2017

 Before Judges Espinosa and Kennedy.

 On appeal from the Superior Court of New
 Jersey, Law Division, Mercer County, Docket
 No. L-1761-10.

 George B. Forbes argued the cause for
 appellants (Forbes Law Offices, LLC,
 attorneys; Mr. Forbes, of counsel and on the
 brief).
 Robert Francis Gold argued the cause for
 respondents (Gold, Albanese & Barletti,
 L.L.C., attorneys; Judy T. Albanese, of
 counsel and on the brief).

PER CURIAM

 Judy Doe,1 by and through her mother, Mother Doe, filed a

complaint against Saker ShopRites, Inc. (ShopRite) and Wakefern

Food Corporation2, (Wakefern) (collectively, defendants), based

upon an incident that occurred at the East Windsor ShopRite

supermarket (the ShopRite store) on July 15, 2008. J.B. and A.Z.

were also named as defendants but have never filed an answer.

Plaintiff3 appeals from an order that granted summary judgment to

defendants, dismissing the complaint. We affirm.

 I.

 The facts, viewed in the light most favorable to plaintiff,

Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 529 (1995);

R. 4:46-2(c), can be summarized as follows.

1
 Fictitious names and initials are used to protect the privacy
of the child.
2
 Saker Holdings Corp., J.S. Family Limited Partnership, L.P.,
John Roe and T.S. were also named as defendants. The claims
against them were voluntarily dismissed.
3
 Because all claims by Mother Doe were voluntarily dismissed,
plaintiff refers to Judy Doe throughout.

 2 A-4583-13T4
 At approximately 10:21 p.m. on July 15, 2008, Judy and her

mother entered ShopRite's store in East Windsor. Judy, six years

old, was wearing a short skirt and a t-shirt.

 Approximately fifteen minutes later, Judy walked down aisle

number 16 toward the front of the store. A store employee, J.B.,

looked at Judy as he walked past the aisle. A minute later, he

repeated this action and, a few seconds later, he again walked

past aisle 16, again looking at Judy. After about one minute, he

stared at Judy from the front of the aisle for forty-four seconds

and then stopped at the display at the end of aisle 16, where he

watched Judy's movements.

 After Judy joined her mother in the meat section, J.B.

approached them, nearly bumping into Judy. While her mother was

in the meat section, Judy picked up a broom in aisle 14. Her

mother told her to return the broom after they walked together to

aisle 15.

 When Judy was alone in aisle 14, J.B. approached her, told

her to "come over" and knelt down to take photographs with his

cellphone of her bare legs. Then J.B. said, "good girl," lifted

Judy's t-shirt to expose her stomach, took a picture, and said,

 3 A-4583-13T4
"really good girl."4 Judy screamed for her mother and J.B. took

off.

 The encounter lasted approximately two minutes and occurred

before J.B.'s shift began.

 Judy's mother found her, shaking, crying and barely able to

speak. She went through the store, asking Judy to point out the

man who had touched and photographed her. They found J.B. in the

warehouse, hiding behind pallets. He volunteered, "I didn't take

any photo[s]," and handed Mother Doe a phone as proof. Judy noted

that J.B. had a different color phone when he photographed her and

her mother asked to speak to a manager.

 Before Judy and her mother found him, J.B. had left the store

and met with A.Z., who now responded as the manager.5 He attempted

to persuade her there were no photos on the phone, again using the

phone J.B. had presented to her. A.Z. also said that J.B. was

"mentally slow," would not do it again and would be punished.

There was no record that A.Z. filed a report regarding this

incident thereafter.

4
 Although it was alleged that J.B. touched Judy in her
chest/breast area at this time, Judy testified that, other than
her shirt, J.B. did not touch any part of her body.
5
 Although A.Z. was J.B.'s direct supervisor, A.Z. was not a
manager; they were both union employees.

 4 A-4583-13T4
 As Judy and her mother walked away, another employee told

them A.Z. was a friend of J.B. and directed them to Keith Hayslett,

the night manager. Hayslett filled out a Customer Incident Report.

He testified he did not call the police because Mother Doe told

him not to do so. He also prepared an Employer's Warning Notice

Corrective Review, dated July 15, 2008, detailing the incident,

that included the following:

 This is against company policy and a violation
 of harassment in the workplace. For your
 alledged [sic] actions, you will be
 disciplined. You have been warned earlier
 about taking pictures of customers.

The details of the discussion and plan of action stated: "For your

alledged [sic] actions [J.B.] is suspended pending union

review/termination. You are not to work until the union has

cleared you to work." J.B. refused to sign the form.

 At his deposition, Hayslett testified that Henry Lemus, the

maintenance manager, told him there had been a prior incident of

J.B. taking pictures of customers. Hayslett did not know who had

warned J.B. about taking pictures or the nature of the pictures

taken, other than that the customer was an adult female. When

deposed, Lemus did not recall telling Hayslett that J.B. had

received a warning or being told that J.B. was taking pictures of

women in the store.

 5 A-4583-13T4
 ShopRite's Loss Prevention Detective, Dale Scott, interviewed

and took audio statements from Hayslett, Lemus, A.Z., and J.B.

Hayslett told Scott he had required the assistance of Lemus to

translate Mother Doe's statements to him. According to Scott's

report, Lemus stated that, when he spoke to her, "she was quite

passive about the entire incident and stated that she doesn't want

to get anyone in trouble, she just wants to know what happened to

her daughter." Lemus's description of Judy's account comports

with the allegations in the complaint. A.Z. contended J.B. did

not take any photos of Judy. J.B. denied the allegations, claiming

he approached Judy out of concern she was alone in the store at a

late hour, asked her where her mother was and intended to help her

find her mother when she ran off crying. He maintained he had no

physical contact with her. Scott concluded there was no evidence

to substantiate the allegation against J.B. and told him he could

return to work as soon as possible.

 At Lemus's request, Michael McDonald, the store manager,

reviewed video surveillance tapes and, based on that review,

contacted the East Windsor police. A search warrant was obtained

for J.B.'s home, resulting in the recovery of pornographic material

and two cell phones. One was a black flip phone that J.B. and

A.Z. had shown to Mother Doe. The other was a gray phone that

contained photos of Judy and other young females. The

 6 A-4583-13T4
investigation also revealed that J.B. sent the photos of Judy to

A.Z.'s cell phone.

 J.B. began working at the ShopRite store in 1997 as a part-

time grocery clerk and was later assigned to the night crew in a

full-time position. He had no prior arrests before this incident.

J.B. was charged with luring, N.J.S.A. 2C:13-6, and engaging in

sexual conduct that would impair or debauch the morals of a child,

N.J.S.A. 2C:24-4(a). In a psychological evaluation conducted at

the request of his public defender for his defense in the criminal

charges filed after this incident, J.B. acknowledged behavioral

issues.

 A.Z. had worked at the ShopRite store previously, left to

start a business and later returned, working as the night crew

chief as of 2008. No additional review of his application was

conducted at the time he was rehired because his superiors knew

his reason for leaving and what his work performance was before

he left. A.Z. was charged with engaging in sexual conduct that

would impair or debauch the morals of a child, N.J.S.A. 2C:14-

9(a), based upon his receipt of photos from J.B.

 A psychologist evaluated Judy approximately four years after

the incident at ShopRite. Judy was reported to have academic

difficulties, impulsive behavior, nightmares and trouble sleeping.

The psychologist found "positive symptoms for Posttraumatic Stress

 7 A-4583-13T4
Disorder (PTSD), suffered as a direct result of the traumatic

incident at" the ShopRite store. She also opined that "Attention-

Deficit/Hyperactivity Disorder (ADHD) of the Inattentive Type or

the Hyperactive-Impulsive Type should be ruled out."

 The complaint alleged intentional tort and violation of New

Jersey's Child Sexual Assault Act, N.J.S.A. 2A:61B-1 (count one),

abduction and false imprisonment (count two), assault and battery

(count three), negligent hiring, retention, training and

supervision (count four), intentional infliction of emotional

distress (count five), and negligent infliction of emotional

distress (count six).

 Defendants filed a motion for summary judgment. Mother Doe's

claims were voluntarily dismissed. Plaintiffs did not oppose

dismissal of the counts alleging assault and intentional

infliction of emotional distress as to Judy, and, at oral argument,

announced the dismissal of counts against all defendants except

Wakefern and ShopRite.

 After additional briefing, the trial judge heard oral

argument on whether ShopRite could be liable, under a theory of

vicarious liability, for the intentional acts of J.B. and A.Z.

Plaintiffs' counsel argued that the statement in the Employer's

Warning Notice Corrective Review, "You have been warned earlier

about taking pictures of customers," presented an issue of fact

 8 A-4583-13T4
that should preclude summary judgment as to ShopRite.6 He

contended further that the reference to the warning was "bolstered"

by the discovery of photographs of other females on J.B.'s cell

phone by the police.

 Noting that extensive discovery had been conducted, the trial

judge found the reference to a prior warning was insufficient to

present a material issue of fact to warrant the imposition of

vicarious liability on ShopRite, even considering the photos found

on J.B.'s cell phone. She observed that the prior warning only

referred generally to "pictures of customers," without any

additional information as to the age of the customers or whether

the pictures were otherwise inappropriate in any way. She stated

the jury should not be allowed to speculate "that J.B. was taking

pictures of little kids or adults going . . . up their skirts

or . . . telling them to pick up their shirts, if you're talking

about little kids, or anything inappropriate." And, she concluded,

it would be mere speculation for the jury to find that the warning

proved J.B. had taken such photos and ShopRite knew about it.

Accordingly, she granted summary judgment to defendants.

6
 Plaintiffs' counsel argued that Wakefern should be denied
summary judgment on a different theory, but conceded that if
ShopRite was dismissed, there would be no basis for Wakefern to
be denied summary judgment.

 9 A-4583-13T4
 II.

 On appeal, plaintiff argues the trial judge applied an

erroneous standard to the summary judgment motion. She argues she

sustained her intentional tort claim against J.B. and, therefore,

ShopRite is vicariously liable because its retention of J.B. was

reckless or negligent. She contends there was adequate evidence

to support her claim of negligent retention because ShopRite had

previously issued a warning to J.B. Finally, plaintiff argues

that, even if J.B. were off-duty at the time of the incident, it

was foreseeable that his known behavior would lead to customer

harm. We are unpersuaded by any of these arguments.

 In reviewing a summary judgment decision, we consider the

evidence "in a light most favorable to the non-moving party," Rowe

v. Mazel Thirty, LLC, 209 N.J. 35, 38 (2012) (citing R. 4:46-2(c),

"to determine if there is a genuine issue as to any material fact

or whether the moving party is entitled to judgment as a matter

of law," id. at 41 (citing Brill, supra, 142 N.J. at 529). "An

issue of fact is genuine only if, considering the burden of

persuasion at trial, the evidence submitted by the parties on the

motion, together with all legitimate inferences therefrom favoring

the non-moving party, would require submission of the issue to the

trier of fact." R. 4:46-2(c).

 10 A-4583-13T4
 Plaintiff cites Section 219 of the Restatement (Second) of

Agency (1957) (Restatement), as legal support for her claim against

ShopRite. Restatement, supra, § 219 states, in pertinent part:

 (1) A master is subject to liability for the
 torts of his servants committed while acting
 in the scope of their employment.

 (2) A master is not subject to liability for
 the torts of his servants acting outside the
 scope of their employment, unless:

 . . . .

 (b) the master was negligent or
 reckless . . . .

 No credible argument can be made that J.B. was acting within

the scope of his employment when he subjected Judy to photographing

her and raising her shirt. The question then, is whether plaintiff

has presented evidence that creates a material issue of fact as

to whether ShopRite was negligent or reckless.

 Plaintiff argues "ShopRite was reckless in its retention of

J.B. because it had prior knowledge that he was following and

taking pictures of customers." To establish such knowledge,

plaintiff relies upon the sentence in the Employer's Warning Notice

Corrective Review, "You have been warned earlier about taking

pictures of customers."

 This sentence exists, untethered to any evidence that informs

what the warning was, who gave it to J.B. and, most notably, what

 11 A-4583-13T4
meaning should be given to "taking pictures of customers." The

ages of the customers and the nature of the pictures are not

specified in this statement. Certainly, there is no reference to

J.B. touching a child's or any customer's clothing to expose their

torso. As the trial judge astutely observed, speculation is

required to interpret these general words as proving ShopRite had

knowledge that J.B. engaged in similar behavior before.

 Plaintiff argues that her characterization of the warning is

confirmed by the photographs found on J.B.'s cellphone. The

investigating detective described them in his deposition as

"several pictures of other juvenile females." Plaintiff has not

identified any other evidence in the record that expands the

description of these photos. It is, therefore, unknown how young

these females were, where or when the photographs were taken,

whether the females were customers of ShopRite, or whether the

photographs show that J.B. manipulated the clothing of any juvenile

female to expose her skin. Most important, there is no evidence

in the record that ShopRite had knowledge of the photos on J.B.'s

phone before July 15, 2008.

 Although the non-moving party is entitled to all favorable

inferences, "it is evidence that must be relied upon to establish

a genuine issue of fact." Cortez v. Gindhart, 435 N.J. Super.

589, 605 (App. Div. 2014), certif. denied, 220 N.J. 269 (2015).

 12 A-4583-13T4
"Competent opposition requires 'competent evidential material'

beyond mere 'speculation' and 'fanciful arguments.'" Hoffman v.

AsSeenOnTv.com, Inc., 404 N.J. Super. 415, 426 (App. Div. 2009)

(citation omitted).

 The evidence relied upon by plaintiff is probative of J.B.'s

guilt of the offense for which he was convicted. It does not,

however, offer any competent proof that ShopRite had knowledge of

any behavior by him prior to July 15, 2008 that would have rendered

them reckless or negligent in keeping him employed as a member of

their night crew.

 To the extent that we have not addressed any arguments

presented by plaintiff, it is because we deem those arguments lack

sufficient merit to warrant discussion in a written opinion. R.

2:11-3(e)(1)(E).

 Affirmed.

 13 A-4583-13T4