**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-0732-20
     A-0760-20

1530 OWNERS CORP., GARNIK
AZARNIA, JO ANN CROSS, and
MOE MARSHALL,

   Plaintiffs-Appellants,

v.

AMERICANA ASSOCIATES,
THE OLNICK ORGANIZATION,
INC., ROBERT OLNICK
ASSOCIATES OF NEW JERSEY,
d/b/a ROBERT OLNICK
CORPORATION,

   Defendants-Respondents.

_____

1530 OWNERS CORP., GARNIK
AZARNIA, JO ANN CROSS, and
MOE MARSHALL,

   Plaintiffs-Respondents,

v.

AMERICANA ASSOCIATES,
THE OLNICK ORGANIZATION,

INC., ROBERT OLNICK
ASSOCIATES OF NEW JERSEY,
d/b/a ROBERT OLNICK
CORPORATION,

Defendants-Appellants.
_____

Argued September 23, 2021 – Decided October 14, 2021

Before Judges Alvarez and Mawla.

On appeal from the Superior Court of New Jersey,
Chancery Division, Bergen County, Docket Nos.
C-000181-19 and C-000281-19.

John Randy Sawyer argued the cause for appellants in
A-0732-20 and respondents in A-0760-20 (Stark &
Stark, PC, attorneys; John Randy Sawyer, of counsel
and on the briefs).

Michael B. Kramer (Michael B. Kramer & Associates)
of the New York bar, admitted pro hac vice, argued the
cause for respondents in A-0732-20 and appellants in
A-0760-20 (Michael B. Kramer and Richard A.
Medina, attorneys; Michael B. Kramer, of counsel and
on the briefs; Richard A. Medina, on the briefs).

PER CURIAM

In A-0732-20, plaintiffs 1530 Owners Corp. (the corporation), Garnik

Azarnia, Jo Ann Cross, and Moe Marshall appeal from an August 28, 2020 order

dismissing their complaint and granting summary judgment in favor of

defendants Americana Associates (Americana), The Olnick Organization, Inc.

(Olnick), and Robert Olnick Associates of New Jersey (d/b/a/ Robert Olnick Corporation) (Olnick Associates). In A-0760-20, defendants challenge a November 13, 2020 order denying their request for counsel fees. We affirm in both matters.

Plaintiffs represent owners of units and shareholders of a cooperative in The Colony, an apartment building in Fort Lee. On July 25, 1985, Americana conveyed the building and corresponding land to the corporation. Americana formed the corporation, which owns and manages the building. It also created an offering plan, which outlined conversion of the property to a cooperative and contained by-laws for governance of the cooperative. According to the plan, Americana as the sponsor-seller would sell apartments with corresponding shares in the corporation to tenants residing in the building. Olnick operates as Americana's management, sales, and leasing agent. Olnick Associates is the selling agent.

Pursuant to the plan, tenants were entitled to purchase the shares allocated to their apartments, which conferred certain rights and benefits on the owner. The plan provided as follows:

> The [u]nsold [s]hares shall retain their character as
> such, regardless of subsequent transfer, until they are
> purchased and the apartment to which the same relate
> is occupied by a purchaser for bona-fide occupancy for

himself or a member of his family or the holder of [u]nsold [s]hares (or a member of his family) becomes a bona-fide occupant of the [a]partment.

Under a section titled "Shares Unsold Prior to Closing", the plan stated:

At closing, title to [u]nsold [s]hares shall remain in the name of [Americana] or shall be transferred to one or more financially responsible natural persons procured by [Americana]. [Americana] represents and agrees to sell or transfer to one or more financially responsible natural persons, by no later than the third anniversary of the [c]losing [d]ate, all then remaining [u]nsold [s]hares held by it.

The persons owning the [u]nsold [s]hares, whether they be [Americana] or persons produced by [Americana], are herein collectively called "holders of [u]nsold [s]hares" or "purchasers of [u]nsold [s]hares."

. . . .

Each holder of a block of [u]nsold [s]hares shall enter into a [p]roprietary [l]ease[1] covering the [u]nsold [a]partment to which such block of [u]nsold [s]hares is allocated. In addition, except for [Americana], all other holders of [u]nsold [s]hares will represent in writing to . . . [the corporation] at closing that they are purchasing the same for their own account (beneficial and of record) and not as nominee of [Americana] or any corporation, joint venture, partnership, trust or estate. . . . The [u]nsold [s]hares include shares subscribed to, but not fully paid, at closing.

. . . .

---

[1] The proprietary lease defined the rights and obligations of each shareholder in their apartment and to the cooperative.

A-0732-20

Each holder of [u]nsold [s]hares shall have the right, freely and without charge, to sublet his [u]nsold [a]partments to such person and on such terms and conditions as he deems desirable and shall also have the right, freely and without charge, to sell such [u]nsold [s]hares and transfer the appurtenant [p]roprietary [l]ease to any individual third party, provided the consent only of the then managing agent of the [b]uilding is first obtained with respect to said subletting or sale and transfer, which consent shall not be unreasonably withheld and must be given in the case of a sublease or sale to a financially responsible individual. The consent of . . . [the corporation] or its shareholders shall not be required with respect to any such subletting, sale or transfer. . . . At closing, . . . [the corporation] will enter into an agreement with each holder of [u]nsold [s]hares confirming the foregoing rights and benefits.

The plan also contained the following provisions:

Subletting Apartment and Sale of Shares

b)     Neither the subletting of the [a]partment nor the assignment of this [l]ease, by the [l]essee who is the holder of the block of [u]nsold [s]hares allocated thereto, shall require the consents of the [d]irectors or [s]hareholders . . . .

Change in Form of Lease

c)     Without the consent of the [l]essee, no change in the form, terms or conditions of this [p]roprietary [l]ease . . . shall (1) affect the rights of the [l]essee who is the holder of the [u]nsold [s]hares accompanying this [l]ease to sublet the [a]partment or to assign this [l]ease, . . . or (2) eliminate or modify any rights, privileges or obligations of such [l]essee.

5

When plaintiffs commenced this litigation in October 2019, fifty-two out of 481 apartments, or 25,475 shares, were held by Americana and remained unsold. Plaintiffs filed a Chancery Division complaint alleging the following causes of action: breach of contract; breach of the implied covenant of good faith and fair dealing; breach of implied promise; fraud; negligent misrepresentation; violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-2; and continuing nuisance.

Plaintiffs alleged "[t]he [u]nsold [s]hares were never intended to be held by Americana in perpetuity" and Americana "expressly represented and promised" to sell or transfer the shares "no later than the third anniversary of the [c]losing [d]ate." They also contended "[i]t was always contemplated, and represented to . . . Azarnia, Cross, and Marshall, and the other individual shareholders of [T]he Colony cooperative, that Americana would sell its shares to individual shareholders for bona fide occupancy, and would not . . . hold on to the [u]nsold [s]hares forever."

Plaintiffs claimed Americana and Olnick rejected offers to purchase the unsold apartments and instead sublet them "rather than market them for sale . . . as . . . represented . . . in the . . . [p]lan." They asserted the non-owner-occupied apartments caused the corporation to sustain "increased wear and tear

A-0732-20

to its building." Plaintiffs alleged defendants refused to provide copies of the subleases and the names and photo identification for the tenants residing in the unsold apartments, which created a safety risk because the corporation could not monitor "violation of [the building's] [a]rticles of [i]ncorporation and [h]ouse [r]ules and [r]egulations." They contended this hampered "management and staff [in] assist[ing] first responders who are called to the building, or to identify residents who would require assistance in an emergency evacuation of the building." Plaintiffs also alleged the New Jersey Department of Community Affairs (DCA) inspected and "found multiple violations in the [u]nits owned by the defendants." They claimed defendants caused the corporation to "expend additional resources, such as administrative time and legal fees, to address these and other issues with the defendants."

The complaint sought the following relief:

> (a) Declaring that the defendants' actions constitute an ongoing nuisance against the plaintiffs;
>
> (b) Declaring that the [u]nsold [s]hares are no longer entitled to the "special rights" set forth in the [o]ffering [p]lan, and shall be subject to the same restrictions as are all issued shares of stock in the [c]orporation;
>
> (c) Compelling the sale of all [u]nsold [s]hares within a period of time to be designated by the [c]ourt;

7

(d) Prohibiting the defendants from entering into any new sub-leases for "[u]nsold [a]partments" once vacated by the current sub-tenants;

(e) Requiring the defendants to provide . . . [the corporation], on an annual basis, with copies of all sub-leases for occupied "[u]nsold [a]partments," as well as the full names of all tenants, and photographs of the adult tenants, and to update this information as [u]nsold [a]partments are vacated; . . .

(f) Awarding compensatory damages; [and]

(g) Awarding pre-judgment interest, post-judgment interest, costs of suit and reasonable attorney's fees; . . .

Defendants filed a motion to dismiss the complaint for failure to state a claim, "and to the extent necessary converting the motion to a motion for summary judgment pursuant to R[ule] 4:6-2(e)" and sought counsel fees and costs. They argued the claims were barred by the statute of limitations. Furthermore, they contended the plan, by-laws, and proprietary lease did not impose an obligation on them to sell the unsold shares and did not bar them from subletting. Defendants asserted plaintiffs failed "to allege how . . . [plaintiffs] have been damaged in any way by Americana's alleged breaches" because Americana owned a minority of the shares, had no representation on the corporation's board, and did not control the corporation, which was "fully viable and functioning."

8

Plaintiffs' opposition to the motion consisted of a three-page certification from their counsel[2] attaching an unpublished Chancery Division case they argued established defendants could not hold the unsold shares in perpetuity. Plaintiffs did not respond to defendants' argument the complaint lacked evidence of damaging conduct, except that defense counsel certified that claims against the Olnick defendants should not be dismissed stating:

> While the full scope and precise details of each of the . . . defendants' respective involvement in the marketing and sale of [u]nsold [s]hares and rentals of apartments at [the building] will be more fully established in discovery, there is ample evidence that the Olnicks play a significant role in these operations, and the claims against them should not be dismissed.

Following oral argument, the motion judge issued a written opinion, in which he primarily concluded plaintiffs' claims were barred by the statute of limitations. He found as follows:

> Here, unlike cases that require a Lopez[3] hearing, the date in which [p]laintiffs' claims accrued are clear[ly] and expressly stated in the governing documents, and is, in fact, the date advanced by [p]laintiffs in the [c]omplaint. There is no difficulty in discerning [p]laintiffs' claims in this action. It is clear from the . . . [p]lan that the date [p]laintiffs' claims accrued was three years after the [c]losing [d]ate. As noted above,

---

[2] Plaintiffs had different counsel in the trial court.

[3] Lopez v. Swyer, 62 N.J. 267, 275 (1973).

the . . . [p]lan, in reference to the amount of time . . . Americana had to transfer the [u]nsold [s]hares, states the following:

> [Americana] represents and agrees to sell or transfer to one or more financially responsible natural persons, by no later than the <u>third</u> anniversary of the [c]losing [d]ate, all then remaining [u]nsold [s]hares held by it. . . .

Based on this clear language . . . , to the extent that [p]laintiffs believed they had a claim against . . . Americana for failing to transfer all [u]nsold [s]hares within three years of the [c]losing [d]ate, there is no question that these claims would have arose on July 25, 1988. Thus, [p]laintiffs are not entitled to discovery to discern this unambiguous accrual date of their claims.

To the extent that [p]laintiffs were deterred from bringing claims against [d]efendants because of . . . Americana's alleged ongoing contractual breaches, . . . the [c]ourt does not find any merit in this additional argument for tolling the statute of limitations. . . . Americana possesses a mere 8.57% of the [c]orporation's shares. The [c]ourt is unable to see how an entity with less than [nine percent] of an ownership stake in a corporation could exert the necessary influence on a corporation's board to not bring claims that they felt were warranted. Here, there was no such influence or continuing breach that impacted the [c]orporation in such a way as to not bring their claims in a timely manner.

Ultimately, this [c]ourt would not need to decide whether the six-year or twenty-year statute of limitations applies, because regardless of which

A-0732-20

controls, the timeframe to bring these claims has expired.

Notwithstanding the statute of limitations bar, the judge rejected plaintiffs' argument Americana was required to sell all its shares. Declining to follow the unpublished case plaintiffs provided, the motion judge cited 511 W. 232nd Owners Corp. v. Jennifer Realty Co., 98 N.Y.2d 144 (N.Y. 2002). He noted "the New York Court of Appeals found that . . . once viability for a cooperative is reached, then there is no longer a duty to sell the unsold shares still held by the sponsor." He concluded

> it is clear that . . . Americana's actions, or inactions, have left the . . . cooperative viable. First, . . . Americana only maintains 8.57% of the shares and 10.81% of the apartment units. Second, it was ultimately discovered by the tenant-owners in Jennifer Realty that the sponsor had rejected offers to purchase unsold shares/unsold apartments; no such allegations have been made here.

> In addition, [p]laintiffs have failed to plead any facts that would demonstrate not only that the [cooperative] is less-than-viable as a cooperative, but also that there is any frustration in shareholders' ability to resell their units or to obtain favorable financing, or that the [u]nsold [s]hares have caused damage or wear and tear to the [b]uilding causing an increase in maintenance payments. There is simply nothing here convincing the [c]ourt that the [u]nsold [s]hares have: (1) created an unviable existence for this cooperative; (2) caused an untenable situation for the unit holders regarding the selling, marketing, or financing of their

11

apartment ownership; or (3) induced additional damage to the building with increased maintenance costs

The judge found the plan, the proprietary lease, and the by-laws did not impose a

> deadline for . . . Americana to have sold or transferred their shares to individuals for occupancy.
>
> . . . .
>
> . . . Rather, the only obligation on . . . Americana was to transfer or sell its [u]nsold [s]hares to natural persons.
>
> . . . .
>
> . . . [T]hese documents emanate an intention of the parties to create a clear status of [u]nsold [s]hares, with all their rights and obligations, and an intention to dive deeply into the characteristics of these units and how they operate, all the while expressly utilizing the key "for occupancy" language when describing the characteristics of the [u]nsold [s]hares, but not for the obligations of the sponsor. Thus, the governing documents create a partnership in which the sponsor retains the [u]nsold [s]hares, must transfer them to natural persons, but is not obligated to sell them to purchasers for occupancy within any set timeframe.

The August 2020 order also denied defendants' request for counsel fees. Defendants moved for reconsideration of the counsel fee issue citing the proprietary lease, which reads as follows:

12

> If the [l]essee shall at any time be in default hereunder and the [l]essor shall incur any expense (whether paid or not) in performing acts which the [l]essee is required to perform, or in instituting any action or proceeding based on such default, or defending, or asserting a counterclaim in, any action or proceeding brought by the [l]essee, the expense thereof to the [l]essor, including reasonable attorney's lees and disbursements shall be paid by the [l]essee to the [l]essor, on demand, as additional rent.

Pursuant to this provision, defendants argued counsel fees were compensable under the Tenant Protection Act, N.J.S.A. 2A:18-61.66.

The judge denied the request for counsel fees. He concluded: "This was, in essence, a corporate action by the . . . [corporation] against the entities . . . that initially did the conversion . . . , not some specific tenant . . . that . . . [N.J.S.A. 2A:18-61.66] . . . [seeks] to protect."

A-0732-20

We review a grant of summary judgment under the same standard as the motion judge. Rowe v. Mazel Thirty, LLC, 209 N.J. 35, 41 (2012). We must determine whether there are any genuine issues of material fact when the evidence is viewed in the light most favorable to the non-moving party. Id. at 38, 41. A genuine factual issue exists "if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require

submission of the issue to the trier of fact." R. 4:46-2(c). "[T]he legal conclusions undergirding the summary judgment motion itself [are reviewed] on a plenary de novo basis." Est. of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 385 (2010).

A motion for summary judgment will not be defeated by bare conclusions lacking factual support, Petersen v. Twp. of Raritan, 418 N.J. Super. 125, 132 (App. Div. 2011), self-serving statements unsupported by legally competent evidence, Heyert v. Taddese, 431 N.J. Super. 388, 413-14 (App. Div. 2013), or disputed facts "of an insubstantial nature." Pressler & Verniero, Current N.J. Court Rules, cmt. 2.1 on R. 4:46-2 (2022). Rather, "it is evidence that must be relied upon to establish a genuine issue of fact. 'Competent opposition requires "competent evidential material" beyond mere "speculation" and "fanciful arguments."'" Cortez v. Gindhart, 435 N.J. Super. 589, 605 (App. Div. 2014) (emphasis omitted) (quoting Hoffman v. Asseenontv.Com, Inc., 404 N.J. Super. 415, 425-26 (App. Div. 2009)). "The practical effect of this rule is that neither the motion court nor an appellate court can ignore the elements of the cause of action or the evidential standard governing the cause of action." Bhagat v. Bhagat, 217 N.J. 22, 38 (2014).

14

## Statute of Limitations and Tolling

N.J.S.A. 2A:14-1 states: "Every action at law for . . . any tortious injury to real . . . property . . . shall be commenced within [six] years next after the cause of any such action shall have accrued." N.J.S.A 2A:14-7 states: "Every action at law for real estate shall be commenced within [twenty] years next after the right or title thereto, or cause of such action shall have accrued."

We have stated:

> Equitable tolling has generally been applied in three circumstances:
>
> (1) [where] "the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass" . . .
>
> (2) where a plaintiff has "in some extraordinary way" been prevented from asserting his rights [and] . . .
>
> (3) where a plaintiff has timely asserted his rights mistakenly by either defective pleading or in the wrong forum.
>
> [Freeman v. State, 347 N.J. Super. 11, 31 (App. Div.), certif. denied, 172 N.J. 178 (2002) (quoting Dunn v. Borough of Mountainside, 301 N.J. Super. 262, 2[80] (App. Div. 1997), certif. denied, 153 N.J. 402 (1998)).]

"[A]bsent a showing of intentional inducement or trickery by a defendant, the doctrine . . . should be applied sparingly and only in the rare situation where it is demanded by sound legal principles and in the interest of justice." Ibid. As required by the doctrine of substantial compliance, equitable tolling requires plaintiffs to "diligently pursue their claims" because although it "'affords relief from inflexible, harsh or unfair application of a statute of limitations,' [it] does not excuse claimants from exercising the reasonable insight and diligence required to pursue their claims." Id. at 31-32 (quoting Villalobos v. Fava, 342 N.J. Super. 38, 52 (App. Div.), certif. denied, 170 N.J. 210 (2001)).

[Binder v. Price Waterhouse & Co., 393 N.J. Super. 304, 312-13 (App. Div. 2007) (first and second alteration in original) (emphasis added).]

Plaintiffs assert the judge granted summary judgment based on disputed assertions and discovery was necessary before he could determine when their claims accrued because not every claim "depend[ed] on the date Americana represented it would sell or transfer all [u]nsold [s]hares to natural persons." Plaintiffs argue the plan and the articles of incorporation, which contemplated Americana would sell the apartments in its control and the attendant shares rebut the finding Americana was not required to sell its shares. They also contend the allegation defendants rejected offers to purchase unsold shares and apartments, which therefore tolled the statute of limitations, constituted a material factual dispute. They argue the judge did not resolve whether the applicable statute of

16

limitations was six years, under N.J.S.A. 2A:14-1, or twenty years, pursuant to N.J.S.A. 2A:14-7.

Having considered plaintiffs' arguments and reviewed the record, we affirm the grant of summary judgment on counts one through six as barred under the statute of limitations for the reasons expressed by the motion judge. The plan demarcates a date for the transfer of the unsold shares. Apart from the continuing nuisance count, which was an alleged ongoing harm, plaintiffs' other claims accrued on July 25, 1988, which is the third anniversary of the closing date and the date plaintiffs allege the sales of the unsold shares must have been concluded. No discovery was required to determine the accrual date.

We are unconvinced the statute of limitations should have been equitably tolled, or discovery was necessary to determine the accrual date. The record lacks any evidence defendants rebuffed offers to purchase the unsold units. Moreover, the record is devoid of evidence showing plaintiffs were deprived of asserting their rights by defendants in an "extraordinary way" and the expanse of time that has passed since plaintiffs' claims accrued in 1988 impels us to conclude they did not timely assert their rights. Plaintiffs' claims exceeded the statute of limitations under N.J.S.A. 2A:14-1 and N.J.S.A 2A:14-7.

A-0732-20

## Continuing Nuisance

Our Supreme Court has defined nuisance as follows:

> The essence of a private nuisance is an unreasonable interference with the use and enjoyment of [property]. The elements are myriad. . . . Litigation of this type usually deals with the conflicting interests of property owners and the question of the reasonableness of the defendant's mode of use of his [or her property]. The process of adjudication requires recognition of the reciprocal right of each owner to reasonable use, and a balancing of the conflicting interests. The utility of the defendant's conduct must be weighed against the quantum of harm to the plaintiff. <u>The question is not simply whether a person is annoyed or disturbed, but whether the annoyance or disturbance arises from an unreasonable use of the neighbor's [property] or operation of his [or her] business.</u>
>
> [<u>Sans v. Ramsey Golf & Country Club, Inc.</u>, 29 N.J. 438, 448-49 (1959) (emphasis added).]

Plaintiffs argue the complaint sufficiently pled a cause of action for continuing nuisance, which should have survived summary judgment. They contend defendants' subletting of apartments and refusal to identify their tenants created a safety risk because the corporation had "no way of knowing with certainty that the people who are walking through the building actually belong there." Plaintiffs assert the building "'sustained increased wear and tear . . . ' due to the non-owner occupants in Americana's [fifty-two] apartments." They point to the DCA violations as an example of how "defendants' conduct has been

18

injurious to [p]laintiffs' safety, comfort, and well-being" and interfered with plaintiffs' use and enjoyment of their apartments. Plaintiffs argue the judge erred when he concluded they failed to demonstrate the corporation's lack of viability and the judge did not explain how a continuing nuisance claim was barred by the statute of limitations.

We affirm dismissal of the continuing nuisance count because viewing the allegations in their most favorable light we are unpersuaded the claim warrants submission to a factfinder. Summary judgment was appropriate because the record shows defendants provided plaintiffs a list of the tenants occupying defendants' apartments. Furthermore, plaintiffs failed to supply the judge with the DCA violation notice and did not explain with any specificity the violations and how they were attributed to defendants. The same is true for plaintiffs' allegation of wear and tear to the building. Evidence of these claims was neither pled with specificity nor adduced in opposition to defendants' motion.

## Viability of the Corporation

Finally, plaintiffs argue the question of a sponsor's obligation to sell shares in a cooperative is an issue of first impression in New Jersey, which could not be decided on summary judgment, and that the judge should have relied upon unpublished case law rather than New York law. At the outset, we know of no

19

bar to adjudicating such issues on a summary judgment basis. And as a general proposition, we have held "[a]bsent New Jersey precedent, it is appropriate to look to out-of-state cases for guidance." Sulcov v. 2100 Linwood Owners, Inc., 303 N.J. Super. 13, 30 (App. Div. 1997).

The motion judge did not err in relying on Jennifer Realty to adjudicate whether the minority of shares held by defendants affected the corporation's viability. In Jennifer Realty, a rent-controlled building was acquired in 1974 and transferred to the defendant sponsor. 98 N.Y.2d at 150. The defendant received approval from the New York Attorney General to convert the building to a cooperative in 1987, and thereafter sold the building to the plaintiffs, the cooperative board, and defendant retained the unsold shares. Ibid. The plaintiffs sued alleging the defendant retained more than sixty-two percent of the shares corresponding to forty-one of the sixty-six apartments in the building. Ibid. The plaintiffs claimed the defendant ceased updating the offering plan, causing it to lapse, thereby preventing the defendant from selling or marketing shares, and refused offers for purchase of the vacant apartments. Id. at 151.

The plaintiffs alleged the defendant breached its contractual duty to dispose of its shares within a reasonable time and "undermined the contract [and] that its fundamental objective—the creation of a viable cooperative—

20

[was] subverted." Id. at 151, 153. The plaintiffs claimed the defendant's actions affected the cooperative's viability because the defendant 1) retained the majority of the shares; 2) "gave no hint that it would make a sizeable profit by retaining a majority of those shares and leasing apartments at market rates, free of the strictures of rent regulation[;]" 3) "did not mention the risk that the sponsor would keep most of the shares for itself[;]" 4) defeated the purpose of its contract with the plaintiffs by retaining the majority of the shares; 5) "by rejecting offers from prospective buyers and allowing its offering plan to lapse, . . . frustrated [the] plaintiffs' ability to resell their shares, interfered with the [c]o-op [b]oard's refinancing of the building's mortgage and caused shareholders maintenance payments to increase[;]" 6) rented to transient tenants causing "increased wear and tear . . . forcing the [c]o-op [b]oard to charge even higher monthly maintenance fees[;]" and 7) caused "[the] plaintiffs [to] surrender[] their rights pursuant to the Rent Stabilization Code by purchasing shares, but now pay more in monthly maintenance and cooperative loan payments than they had paid in rent as tenants." Id. at 152-53.

The New York Court of Appeals held the plaintiffs pled a cause of action sufficient to survive the motion to dismiss "[b]ecause the sponsor's documentary evidence does not clearly refute these assertions, and particularly in light of the

21

sponsor's duty imposed by the Attorney General not to abandon the offering plan after filing an effectiveness amendment (see 13 NYCRR 18.3[r][11]) . . . ."[4] Id. at 153 (alteration in original).

Subsequent cases have adopted the holding in Jennifer Realty.  In Bauer v. Beekman Int'l Ctr., LLC, the defendant sponsor sold a majority of the units in a newly constructed condominium and the plaintiff brought suit arguing Jennifer Realty required the defendant to sell all of the units.  1 N.Y.S.3d 808 (App. Div. 2015).  The appellate court disagreed and affirmed the trial court's grant of summary judgment dismissal of the plaintiff's complaint noting "the motion court correctly found that [the] defendant demonstrated its prima facie entitlement to judgment regarding the elements of . . . viability relied on by [the] plaintiff, which tracked the language in Jennifer Realty but without elaboration, and [the] plaintiff failed to raise an issue of fact in opposition."  Ibid.

In other words, viability is not defined exclusively by the quantity of units or shares retained by a sponsor but rather by evidence of the sort discussed in Jennifer Realty, showing the sponsor's operation of its portion rendered the corporation unviable.  See also Gillespie v. St. Regis Residence Club, N.Y. Inc.,

---

[4]  13 NYCRR 18.3(r)(11) prohibits a sponsor from abandoning a plan subject to certain exceptions, which are inapplicable to our discussion.

343 F. Supp. 3d 332, 343 (S.D.N.Y. 2018) ("declin[ing] to expand the holding of Jennifer [Realty] . . . to imply an obligation that the [s]ponsor sell 'all' of [its] [i]nterests.")

Here, applying Jennifer Realty we conclude the corporation was viable and plaintiffs presented no evidence to avoid summary judgment in defendants' favor. Defendants possessed less than nine percent of the total share, held no position on the board of the corporation, and did not interfere with the board's operations or its ability to obtain financing or meet its expenses. Defendants did not affect the individual plaintiffs' ability to sell or finance their units. No evidence was presented defendants' units increased either the corporation's expenses or the cost of living in the building. Plaintiffs presented no "competent evidential material[,]" Hoffman, 404 N.J. Super. at 426 (quoting Merchs. Express Money Ord. Co. v. Sun Nat'l Bank, 374 N.J. Super. 556, 563 (App. Div. 2005)), establishing a material issue of fact for a factfinder to resolve regarding the corporation's viability.

### A-0760-20

We review the adjudication of a motion for reconsideration for an abuse of discretion. Cummings v. Bahr, 295 N.J. Super. 374, 389 (App. Div. 1996). Similarly, "fee determinations by trial courts will be disturbed only on the rarest

23

of occasions, and then only because of a clear abuse of discretion." Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 444 (2001) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)). "[A]n abuse of discretion [occurs] when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Deutsche Bank Tr. Co. Ams. v. Angeles, 428 N.J. Super. 315, 319 (App. Div. 2012) (citing U.S. Bank Nat'l Assoc. v. Guillaume, 209 N.J. 449, 467 (2012)) (first alteration in original).

Defendants argue they are entitled to counsel fees pursuant to N.J.S.A. 2A:18-61.66 because the proprietary lease is a residential lease and Americana is the corporation's tenant. They assert the lease mandates an award of fees and affords the motion judge discretion only as to the amount of the award. We disagree.

Like the motion judge, we are unconvinced N.J.S.A. 2A:18-61.66 applied here because the statute governs the award of attorney's fees in a landlord tenant action arising from a residential lease. Neither party asserted a cause of action sounding in tenancy. Our review of the statute's legislative history does not convince us the Legislature intended it to address a dispute such as this one. See

24

generally N.J.S.A 2A:18-61.1(a).  For these reasons we discern no abuse of discretion in the denial of fees to defendants.

Affirmed in A-0732-20 and affirmed in A-0760-20.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION